1
2
3
4
5
6

IN THE UNITED STATES DISTRICT COURT

7

FOR THE DISTRICT OF ARIZONA

8
9

Xcentric Ventures, LLC, et al.,      )    No. CV-09-01033-PHX-ROS
                               )

10

        Plaintiffs,        )    **ORDER**
                               )

11

vs.                          )
                               )

12

                               )
Sarah L. Bird, et al.,          )

13

        Defendants.      )
                               )

14

                               )

15

_____)

16

      Before the Court is Defendants' Motion to Dismiss for lack of personal jurisdiction

17

(Doc. 3), and Plaintiffs' Motion for Leave to Conduct Jurisdictional Discovery (Doc. 12).

18

For the reasons discussed below, the Motion to Dismiss will be granted and the Motion to

19

Conduct Jurisdictional Discovery will be denied.

20

                              **BACKGROUND**

21

      On Jan 21, 2009, Plaintiffs filed a Complaint in Maricopa County Superior Court

22

alleging Defendants defamed Plaintiffs in an article published on a website. (Doc. 1, Ex. A).

23

On April 1, 2009, Plaintiffs filed an Amended Complaint that added an aiding and abetting

24

tortious conduct claim. (Doc. 1, Ex. B).  On May 14, 2009, Defendants removed the action

25

to this Court based on diversity jurisdiction. (Doc. 1).  On the same day, Defendants moved

26

to dismiss for lack of personal jurisdiction. (Doc. 3).

27
28

**STANDARD**

A federal court sitting in diversity applies the personal jurisdiction rules of the forum state and the Due Process Clause of the Fifth Amendment. *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986).   The Arizona and federal rules are identical, as Arizona's long arm statute "provides for personal jurisdiction co-extensive with the limits of federal due process." *Doe v. Am. Nat'l Red Cross*, 112 F.3d 1048, 1050 (9th Cir. 1997) (citing *Batton v. Tenn. Farmers Mut. Ins. Co.*, 736 P.2d 2, 4 (Ariz. 1987)); *see also* Ariz. R. Civ. P. 4.2(a). "Due process requires that nonresident defendants have certain minimum contacts with the forum state, so that the exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice." *Doe*, 112 F.3d at 1050 (citing *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)).   If a defendant's activities in a state are "'substantial' or 'continuous and systematic,' general jurisdiction may be asserted even if the cause of action is unrelated to those activities." *Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1396 (9th Cir. 1986) (internal citations omitted).   Specific jurisdiction may be exercised over a non-resident defendant if: (1) the defendant purposefully directs his activities to the forum or a resident thereof; or performs some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction is reasonable. *Brayton Purcell LLP v. Recordon & Recordon*, 575 F.3d 981, 985 (9th Cir. 2009).

Once a defendant has moved to dismiss for lack of personal jurisdiction, the burden of proving jurisdiction falls on the plaintiff.  *See Butcher's Union Local No. 498, United Food and Commercial Workers v. SDC Inv., Inc.*, 788 F.2d 535, 538 (9th Cir. 1986). If the court adjudicates the motion without a hearing, plaintiff need only make a *prima facie* showing of adequate personal jurisdiction to survive the challenge. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004); *Rio Prop.'s, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002).

When determining the sufficiency of a *prima facie* showing, "[t]he court may consider evidence presented in affidavits." *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001). The court must assume as true all uncontroverted facts in the complaint and must interpret all evidentiary disputes in plaintiff's favor. *See Schwarzenegger*, 374 F.3d at 800 ("[U]ncontroverted allegations in the complaint must be taken as true . . . Conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor."). However, "the plaintiff cannot simply rest on the bare allegations of its complaint" if controverted by evidence incorporated into defendant's motion. *Id.* (internal citation omitted); *see also Data Disc, Inc.*, 557 F.2d at 1284 (A court "may not assume the truth of allegations in a pleading which are contradicted by affidavit."). All evidence must be admissible to be considered. *See Travelers Cas. & Sur. Co. of Am. v. Telstar Const. Co., Inc.*, 252 F. Supp.2d 917, 923 (D. Ariz. 2003); *see also Bach v. McDonnell Douglas, Inc.*, 468 F. Supp. 521, 525-26 n.7 (D. Ariz. 1979).

## DISCUSSION

### I.    Motion to Dismiss

Plaintiffs concede they lack evidence to support general personal jurisdiction over Defendants. They argue there is specific personal jurisdiction over Defendants based on the acts that gave rise to this lawsuit.

Plaintiffs allege Defendants published an article on the internet that defames Plaintiffs and aids and abets others in committing tortious acts that harm Plaintiffs. Plaintiffs contend that the publication of the article act subjects Defendants to personal jurisdiction in this forum because it was "targeted at Plaintiffs in Arizona" and intended to cause harm to Plaintiffs "in Arizona." (Doc. 7 at 8). Plaintiffs rely heavily on *Calder v. Jones*, 465 U.S. 783, 789-90 (1984), in which the Supreme Court held that a California court had personal jurisdiction over persons who authored an article in Florida because "California [was] the focal point both of the story and of the harm suffered." The holding in *Calder* has evolved into an "effects test" for specific personal jurisdiction, which has frequently been invoked

1   by courts considering the jurisdictional consequences of intentional torts committed on the

2   internet.[1] *See, e.g. Lange v. Thompson*, 2008 WL 3200249, 3 (W.D. Wash. 2008).

3        Although the Court concluded in *Calder* that jurisdiction was proper "based on the

4   'effects'" of the defendants' conduct, it did not hold that personal jurisdiction exists

5   whenever a defendant's tortious conduct results in foreseeable harm in the forum state.

6   *Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000).  To meet

7   the "effects test" for personal jurisdiction established by *Calder*, a defendant must have "(1)

8   committed an intentional act, which was (2) expressly aimed at the forum state, and (3)

9   caused harm, the brunt of which is suffered and which the defendant knows is likely to be

10  suffered in the forum state." *Id.*  Under this test, intentionally placing defamatory information

11  on the internet is not, by itself, sufficient to subject the author or the owner of the website to

12  personal jurisdiction in the state where the defamed party resides. *See, e.g. Fahmy v. Hogge*,

13  2008 WL 4614322, 4 (C.D. Cal. 2008).  The defendant also must have "expressly aimed" the

14  intentional tort at the forum state, with the knowledge that the resulting harm is likely to be

15  suffered in that state.

16       Defendants do not dispute that publishing the article was an intentional act, which thus

17  satisfies the first prong of the *Calder* effects test.  Defendants argue they did not expressly

18  aim the allegedly defamatory article at Arizona or even know Defendants resided in the state.

19  Defendants cite to an affidavit of Defendant Bird in which she avers that at the time she

20  wrote the article she did not know Mr. Magedson was an Arizona resident or that Xcentric

21  Ventures was an Arizona corporation. (Doc. 3, Ex. 1 at ¶ 15).  Defendants also cite Ms.

22  

23       [1] In addition to the *Calder* effects test, the Ninth Circuit has also considered the

24  jurisdictional consequences of torts committed on the internet based on a sliding scale
analysis that reviews the website's level of interactivity. *See, e.g. Cybersell, Inc. v. Cybersell,*

25  *Inc.*, 130 F.3d 414, 419 (9th Cir. 1997).  Because the *Calder* test is specifically concerned
with intentional torts, it is more relevant to the facts in this case.  It is noted, however, that

26  the sliding scale interactivity test offers additional support to the ruling in this Order that the
Court lacks personal jurisdiction over Defendants.  Defendants argue, and Plaintiffs do not

27  dispute, that the article was published on a passive blog that did not attempt to actively

28  engage Arizona readers.

1   Bird's affidavit for her testimony that the blog containing her article was not targeted to

2   Arizona residents. (Doc. 3, Ex. 1 at ¶ 12).  Plaintiffs attempt to controvert this testimony.

3   Plaintiffs cite an affidavit from David Gingras, in which he avers that there are numerous

4   sources (such as Plaintiffs' website) that establish Plaintiffs' Arizona residence. (Doc. 8).

5   Plaintiffs argue Ms. Bird must have (or easily could have) learned of Plaintiffs' residence

6   from these sources.  Plaintiffs thus present circumstantial evidence that Defendants were

7   aware Plaintiffs resided in Arizona at the time they published the article.  In the event the

8   Court finds this circumstantial evidence insufficient to show Defendants' knowledge of

9   Plaintiffs' residence, Plaintiffs move for leave to conduct jurisdictional discovery to acquire

10  additional evidence.  Before considering whether leave to conduct jurisdictional discovery

11  should be granted, however, the Court must first determine whether proof that Defendants

12  knew Plaintiffs residence at the time they published the article would be enough to establish

13  personal jurisdiction.

14          Apart from alleging Defendants knew Plaintiffs were Arizona residents when the

15  article was published, Plaintiffs have not alleged any facts to support a connection between

16  Arizona and the article.  Plaintiffs do not allege that the article mentioned Arizona or Arizona

17  residents, or that Defendants took any affirmative steps to direct the article or website to an

18  Arizona audience.  Plaintiffs thus suggest that intentional defamation on the internet,

19  combined with knowledge of the defamed individual's residence, is sufficient to satisfy the

20  *Calder* effects test for personal jurisdiction.

21          The three-part *Calder* "effects test," and the Ninth Circuit cases employing it, do not

22  make clear whether this result follows.  The three-prong "effects test" distinguishes the

23  requirement of "express aiming" (the second prong) from the requirement that there be

24  "knowledge" that harm is likely to be suffered in the forum state (the third prong).  Given the

25  widespread use of the internet, the latter requirement would appear to almost always be

26  satisfied when one posts defamatory statements on the internet, and knows where the

27  defamed person resides.  Although communities in the United States with little or no internet

28  usage still exist, in general, it is quite foreseeable that the brunt of the reputational harm that

1   results from internet-based defamation is most likely to be felt in the forum where the

2   defamed individual lives, works, and maintains social relationships.

3       It is considerably less clear whether the second prong, the ambiguously phrased

4   requirement that the tort be "expressly aimed" at the forum, is also satisfied when defamatory

5   statements about a known forum resident are intentionally posted on the internet. The Ninth

6   Circuit, interpreting *Calder,* has emphasized that  "something more than mere foreseeability

7   [that harm will result in the forum] [is required] in order to justify the assertion of personal

8   jurisdiction . . . and that 'something more' means conduct expressly aimed at the forum."

9   *Brayton Purcell LLP v. Recordon & Recordon*, 575 F.3d 981, 986 (9th Cir. 2009) (internal

10  quotation marks and citations omitted).   The distinction between "express aiming" and

11  "foreseeablity" suggests that mere knowledge of an individual's residence, combined with

12  intentional posting of defamatory statements on the internet (which, taken together, makes

13  it foreseeable an individual will be harmed in a certain forum location) does not amount to

14  "express aiming."  Although what else is required is unclear, the express aiming requirement

15  appears to demand a showing that there is at least some additional connection between the

16  defamatory act and the forum.

17      In *Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000),

18  the Ninth Circuit held that the "express aiming" requirement is satisfied when "the defendant

19  is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant

20  knows to be a resident of the forum state."  Since most  intentional torts are acts that involve

21  "individually targeting" a victim, a literal reading of this holding would appear to result in

22  a rule that, practically speaking, means that an intentional tort plus knowledge of the victim's

23  residence amounts to "express aiming."  In *Bancroft*, the court found personal jurisdiction

24  in California based on a letter sent to Virginia because the letter was intended to interfere

25  with the domain name rights of a California resident (thus was "individually targeted") and

26  the sender knew that the effects of the letter would primarily be felt in California (the harm

27  location was foreseeable). *Id.* at 1087.  *Bancroft* thus appears to suggest a rule that whenever

28  a person intends to defame an individual on the internet (i.e., intentionally targets that

individual), and at the same time knows where that individual resides (i.e., the individual is a "known forum resident"), the person is subject to personal jurisdiction in the forum where the defamed individual resides.

The Ninth Circuit's recent holding in *Brayton Purcell LLP v. Recordon Recordon,* 575 F.3d 981, 988 (9th Cir. 2009) also appears to offer some support for this rule. In *Brayton*, the court ruled that there was personal jurisdiction over a non-resident law firm that allegedly created a website that willfully copied portions of another law firm's website. *Id.* In finding personal jurisdiction under the *Calder* effects test, the court emphasized that the defendant knew the forum where the plagiarized law firm resided and it was foreseeable that the resulting harm, such as consumer confusion, would be felt in that forum. *Id.* Judge Reinhardt, perceiving the majority to have ignored the "express aiming" requirement in reaching this result, dissented and wrote:

> The majority here finds express aiming based entirely on (1) the foreseeable harm suffered . . . and (2) [Defendant's] knowledge of [Plaintiff's] residence in the Northern District. In doing so, the majority disregards binding circuit authority, which establishes that 'something more' than the 'foreseeable effect' of an intentional tort committed against a party known to be a resident of the forum is required to establish venue.

*Id.* at 989. The majority's response to the concern voiced by Judge Reinhardt is instructive. The majority wrote:

> Assuming the dissent is correct that something more than knowledge of the residence of the plaintiff is required for there to be express aiming at the Forum, such a requirement is satisfied here; the parties are competitors in the same business so that the intentional infringement will advance the interests of the defendant to the detriment of the Forum interests of the plaintiff.

*Id.* at 988. The majority thus expressly left open the question of whether knowledge of the victim's residence combined with an intentional tort is sufficient to satisfy the express aiming/intentional targeting requirement, or if "something more" is required.

Although *Brayton* and *Bancroft* may suggest a rule that intentional defamation combined with knowledge of the defamed individual's residence is sufficient for personal jurisdiction, it is far from clear from either case that this result inevitably follows. As noted, the *Brayton* court expressly declined to hold that an intentional internet-based tort with a

known forum resident victim was sufficient to create personal jurisdiction.  Several courts that have directly considered the jurisdictional consequences of internet-based defamation, including three District Courts within the Ninth Circuit, have concluded that mere knowledge of the defamed individual's residence is not sufficient to create personal jurisdiction. *See Lange v. Thompson*, 2008 WL 3200249, 3 (W.D. Wash. 2008); *Medinah Mining, Inc. v. Amunategui*, 237 F.Supp.2d 1132, 1138 (D. Nev. 2002); *U-Haul, Int'l, Inc. v. Osborne,* 1999 U.S. Dist. LEXIS 14466 (D. Ariz. 1999); *Young v. New Haven Advocate*, 315 F.3d 256, 264 (4th Cir. 2002); *Bailey v. Turbine Design, Inc.*, 86 F.Sup.2d 790, 797 (W.D. Tenn. 2000); *see also Revell v. Lidov*, 317 F.3d 467, 475 (5th Cir. 2002) (holding there was no personal jurisdiction based on an allegedly defamatory article that contained no reference to the forum state, and also noting, in addition, that the defendant was unaware of Plaintiff's residence). As in these cases, the Plaintiffs in this case have alleged no connection between the allegedly defamatory article and the forum other than that the article was about Plaintiffs and Defendants knew Plaintiffs resided in Arizona.  In accord with these cases, this Court finds that Plaintiffs have not met their burden under the second prong of the *Calder* "effects test" of showing Defendants expressly aimed the allegedly defamatory article at Arizona.

Because Plaintiffs have thus not met their burden of establishing that Defendants purposefully directed their allegedly defamatory article at Arizona (or purposefully availed themselves of the forum), this Court lacks specific personal jurisdiction over Defendants.[2]

---

[2]As the Court finds Plaintiffs have not established  purposeful availment, the Court need not consider whether the exercise of jurisdiction over Defendants in these circumstances would be reasonable.  The Court notes, however, that there are reasons to believe the exercise of jurisdiction would not be reasonable.  The exercise of personal jurisdiction over non-residents merely because they allegedly posted defamatory statements on the internet about a known forum resident could have dramatic consequences for internet-based communication.  The ability to hale an internet user into a distant forum based on an allegation of intentional defamation could be used to chill free speech.  It is true that a rule to the contrary could effectively deprive individuals who cannot afford to litigate outside their forum of a remedy for internet-based defamation. *See* Allison MacDonald, *Youtubing Down the Stream of Commerce: Eliminating the Express Aiming Requirement for Personal Jurisdiction in User-Generated Internet Content Cases*, 19 Alb. L. J. Sci. & Tech. 519

**II.      Motion for Leave to Conduct Jurisdictional Discovery**

Plaintiffs move to conduct jurisdictional discovery to acquire evidence that Defendants knew Plaintiffs resided in Arizona at the time they published the article.  As the Court finds that personal jurisdiction over Defendants is lacking even if Defendants knew Plaintiffs' residence, jurisdictional discovery to establish this fact would be futile.  The Motion will therefore be denied.

Accordingly,

**IT IS ORDERED** Defendants' Motion to Dismiss (Doc. 3) **IS GRANTED.**

**FURTHER ORDERED** Plaintiff's Motion to Conduct Jurisdictional Discovery (Doc. 12) **IS DENIED.**

DATED this 3rd day of February, 2010.

_____
Roslyn O. Silver
United States District Judge

---

(2009).  The harm caused by internet-based defamation can be quite severe and widespread, and conventional wisdom might be that one should have the right to remedy that harm without having to litigate in a distant forum.  These concerns are mitigated, however, by the relative ease of modern air travel.  It is also important to remember that at the pleading stage a plaintiff need only make a prima facie case of defamation.  Requiring plaintiffs to bear the burden of traveling is consistent with requiring plaintiffs to bear the burden of proof at trial, and with the goal served by personal jurisdiction rules of preventing defendants from being unreasonably haled into a distant, and potentially biased, forum.